IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JANE DOE, *a student, by and through her* )
*parents, John Doe, her father, and Mary* )
*Doe, her mother,* et al., )
                              )     NO. 3:23-cv-00422
       Plaintiffs,            )     JUDGE RICHARDSON
                              )
v.                                   )
                              )
CURREY INGRAM ACADEMY,      )
                              )
       Defendant.

**MEMORANDUM OPINION**

The instant case is brought by two minors (pseudonymously called "Jane Doe" and "Grace Roe") by and through their respective parents, and also respectively by those parents on their own behalf. The claims of these minors and their parents are based on Plaintiffs' allegations of what is typically referred to as student-on-student sexual harassment. Plaintiffs allege that the two minors were students at Defendant's boarding school, Currey Ingram Academy ("Academy")[1] and that they were sexually assaulted at the Academy by another student (pseudonymously called "Brenda Doe"). Plaintiffs seek to hold Defendant liable for such alleged harassment pursuant to claims under federal civil rights legislation ("Title IX claims") and state-law negligence theories ("state-law claims"). More specifically, in six respective counts, Plaintiffs assert claims against Defendant: (1) on behalf of Jane Doe and her parents under 20 U.S.C. § 1681, part of Title IX of the Educational Amendments of 1972; (2) on behalf of Grace Roe and her parents under 20 U.S.C. § 1681; (3) for negligence under state law with respect to Jane Doe and her parents; (4) for

---

[1] It appears that "Currey Ingram Academy" is the name of both Defendant as an entity and the school that the entity operates. The Court will refer to the entity as "Defendant" and the school Defendant operates as the "Academy."

negligence under state law with respect to Grace Roe and her parents; (5) for negligent supervision and retention under state law with respect to Jane Doe and her parents; (6) for negligent supervision and retention under state law with respect to Grace Roe and her parents; (7) for negligent training under state law with respect to Jane Doe and her parents; (8) for negligent training under state law with respect to Grace Roe and her parents; (9) for intentional infliction of emotional distress under state law with respect to Jane Doe and her parents; (10) for intentional infliction of emotional distress under state law with respect to Grace Roe and her parents; (11) for negligent infliction of emotional distress under state law with respect to Jane Doe and her parents; and (12) for negligent infliction of emotional distress under state law with respect to Grace Roe and her parents.[2]

Pending before the Court is "Currey Ingram Academy's Rule 12 Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction" (Doc. No. 13, "Motion"), supported by an accompanying memorandum of law (Doc. No. 14, "Supporting Memorandum"). Via the Motion, Defendant asserts that: (i) the first two claims (the Title IX claims) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief should be granted, and (ii) that with the federal claims dismissed, jurisdiction over the final ten claims (which are all state-law claims) is lacking because they do not present a federal jurisdiction as required for jurisdiction under 28 U.S.C. § 1331 and there is no diversity of citizenship between the parties. Plaintiffs have filed a response in opposition to the Motion (Doc. No. 21, "Response"), to which Defendant filed a reply (Doc. No. 22, "Reply").

---

[2] This numbering does not directly mirror the numbering in the Complaint, as the counts in the Complaint are misnumbered from claim eight on.

## MOTION TO DISMISS THE TITLE IX COUNTS UNDER RULE 12(b)(6)

I.       Standards for a Rule 12(b)(6) Motion to Dismiss

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. A legal conclusion, including "[one] couched as a factual allegation[,] need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *accord Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018); *see also Iqbal*, 556 U.S. at 679. Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such

allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

II.      Factual Allegations Relevant to the Instant Rule 12(b)(6) Analysis

Given the particular nature of Defendant's argument in support of its Motion, the Court need not spend time discussing most of Plaintiffs' allegations. That is, the Court need not get into the weeds regarding what Plaintiffs allege regarding the sexual harassment allegedly perpetrated by Brenda Doe or the circumstances (other than the limited circumstances addressed below that allegedly make Defendant liable for such harassment. The Court accepts as true Plaintiffs' allegations in this regard, but ultimately that is beside the point anyway, because the outcome of the Motion does not turn on such allegations. Instead, the outcome turns on what Plaintiffs do not (and, it appears, could not in any event) sufficiently allege.  In their response, Plaintiffs provide the following summary of the relevant underlying allegations in the Complaint (Doc. No. 1, "Complaint"):

> This matter arises out of the sexual harassment and assault sustained by minor Plaintiffs Jane Doe and Grace Roe while attending Currey Ingram Academy during the 2021-2022 school year at the hands of Brenda Doe, a student and child of a Currey Ingram Academy administrator and employee. [Doc. No. 1, ¶¶ 1, 2, 10, 15, 16, 28, attached hereto as Exhibit "A"].

> Currey Ingram Academy is a K-12 day boarding school located at 6544 Murray Lane, Brentwood Tennessee, and is a school for children with learning difficulties, including autistic children. *Id.*, ¶ 4. Currey Ingram Academy is an educational institution as defined by 20 U.S.C. § 1681(c) . . . and receives federal assistance in multiple ways. *Id.*, ¶ 5. Currey Ingram is a 501(c)(3) entity that is tax-exempt. *Id.*

(Doc. No. 21 at 2) (footnote omitted). The Court accepts this summary as accurate, but with the important caveat described in the following paragraph.

Plaintiffs' summary describes paragraph 5 of the Complaint as alleging that Defendant "receives federal assistance in multiple ways." This is not an inaccurate description, but it is important to note more precisely what paragraph 5 alleges: that Defendant "receives federal financial assistance through, amongst other things, tax free status as a 501(c)(3) entity." (Doc No. 1 ¶ 5). The inclusion of "amongst other things" makes it fair for Plaintiffs now to claim that the Complaint alleges that Defendant "receives federal assistance in *multiple* ways." But the fact remains that Plaintiffs have alleged only one way in which Defendant allegedly receives "federal assistance"—namely, by having "tax-free" (a/k/a tax-exempt) status, i.e., by being deemed (by the Internal Revenue Service) an entity that under Internal Revenue Code § 501(c)(3) is exempt from federal income taxes.

III.    Analysis

It seems clear why Plaintiffs allege that they "receive federal assistance." It particular it is clear why they use both the buzzword "receive" and the buzz-phrase "federal assistance." The Supreme Court has made clear which educational institutions are covered by (and thus can be held liable under) Title IX, and which are not: "Entities that *receive* federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX; entities that only *benefit economically from* federal assistance are not." *NCAA v. Smith*, 525 U.S. 459, 465 (1999) (emphases added). !

> Section 901(a) of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Under the Civil Rights Restoration Act of 1987 (CRRA), 102 Stat. 28, 20 U.S.C. § 1687, a "program or activity" includes "all of the operations of . . . a

> college, university, or other postsecondary institution, or a public system of higher education . . . any part of which is extended Federal financial assistance." § 1687(2)(A).

*Id*. at 465-66 (footnote omitted) (alterations in original). By virtue of a Department of Education regulation, 34 C.F.R. § 106.2 (1997), the statutory requirement (for an entity to be covered by Title IX) that an entity be "extended Federal financial assistance" was effectively changed into a requirement that an entity be a "recipient of" Federal financial assistance.[3] It is clear that in *NCAA v. Smith*, the Supreme Court effectively indicated that the question of whether an entity is "extended Federal financial assistance" is co-terminous with whether the entity is a "recipient" within the meaning of 34 C.F.R. § 106.2. *Id.* at 466-68.[4] And the regulation applicable at the time, "[Title 34, Code of Federal regulations,] Section 106.2(h) define[d] 'recipient' to include any entity 'to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives *or benefits from such assistance*.'" *Id.* at 648 (quoting 34 C.F.R. § 106.2(h) (1997)) (emphasis added). The definition of "recipient" has since been moved to 34 C.F.R. § 106.2(i), and has been amended with respect to the words the Court has italicized,[5] but that amendment is immaterial in the instant case and does not affect resolution of the motion.

---

[3] Given the below-noted regulatory definition of "recipient," however, whether an entity is a "recipient" turns on whether it has been "extended Federal financial assistance," and so the change here is not substantive. Nevertheless, the applicable discussion out the outset should be framed in terms of whether the entity is a "recipient," not whether the entity is "extended Federal financial assistance."

[4] In so doing, the Supreme Court evidently saw no need to conduct a so-called *Chevron*-deference analysis to ensure that it was proper to rely on and apply the regulatory interpretation of § 1687(2)(A) represented by 34 C.F.R. § 106.2. Perhaps this is because, as far as the opinion indicates, neither party questioned such propriety; in other words, they seemed to assume that *Chevron* deference was appropriate with respect to 34 C.F.R. § 106.2.

[5] The italicized words have been replaced with "such assistance, including any subunit, successor, assignee, or transferee thereof." The current amended version of "recipient," and its codification at subsection (i) of 34 C.F.R. § 106.2, has been in place since prior to the events alleged in the Complaint.

The upshot here is that even if the allegation here (that Defendant has "received federal assistance" by virtue of being granted tax-exempt status by a federal agency) is a fair verbal characterization in a general, non-technical sense, that is not enough. What is relevant here is whether Defendant has plausibly alleged that Defendant receives[6] "federal assistance" (a/k/a "Federal financial assistance," the statutory term)[7] as the Supreme Court has defined it (in light of 34 C.F.R. § 106.2 (1997))—i.e., that Defendant is a "recipient" within the meaning of 34 C.F.R. § 106.2(i).

As the applicable regulation makes clear, an entity cannot be a "recipient" unless (among other things) Federal financial assistance is "extended [to it] directly or through another recipient . . . ." 34 C.F.R. § 106.2(i). The Complaint does not allege (and neither side has suggested) that Federal financial assistance is extended to Defendant through another recipient. So the question here is whether Federal financial assistance is extended to Defendant directly. According to the applicable regulation, which the Court finds no reason (such as a refusal to afford *Chevron* deference) not to follow:

> Federal financial assistance means any of the following, when authorized or extended under a law administered by the Department:
>
> (1) A grant or loan of Federal financial assistance, including funds made available for:
>
> > (i) The acquisition, construction, renovation, restoration, or repair of a building or facility or any portion thereof; and

---

[6] The Court herein at times will use the present tense in referring to alleged facts and legal conclusions because Plaintiffs have done so, while remaining cognizant that in general what matters is what the facts, and appropriate legal conclusions, were at the time of the events in question a couple of years ago.

[7] By statute, clearly the applicable technical/legal term here actually is "Federal financial assistance," but it is clear that the Supreme Court in *NCAA v. Smith* used that term interchangeably with "federal assistance," and so the Court does not begrudge anyone doing likewise, as Plaintiffs have done in their Response.

(ii) Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.

(2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.

(3) Provision of the services of Federal personnel.

(4) Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.

(5) Any other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

34 C.F.R. § 106.2(g).[8]

"What is conspicuously absent from that laundry list is income tax exemption." *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n Illinois, Inc.*, 134 F. Supp. 2d 965, 971–72 (N.D. Ill. 2001).

It is entirely clear to the Court that the Government's provision (through the Internal Revenue Service) to Defendant of tax-exempt status does not fit within the definition of Federal financial assistance. If one goes through each of the five categories, it is readily apparent that none cover the mere provision of tax-exempt status. The first category manifestly would be the most likely, and yet it cannot reasonably be set that that tax-exempt status—which the Court will construe in Plaintiffs' favor to necessarily entail enabling the entity to keep funds that otherwise

---

[8] This definition is the definition as of both the present time and the time of the events alleged in the Complaint.

Defendant cites a more limited (though otherwise not dissimilar) definition of "Federal financial assistance" found elsewhere in the Title IX regulations, specifically at 31 C.F.R. § 28.105. (Doc. No. 14 at 5). But the regulations among which that definition is found are inapplicable to the statute here at issue, i.e., 20 U.S.C. § 1681. *See* 31 C.F.R. § 28.105.

would be payable to the federal government as income tax—does not constitute a "grant or loan" of anything whatsoever.[9]

So Defendant's tax-exempt status does not mean that it has been extended "Federal financial assistance," and thus does not mean that it is a "recipient," and thus does not mean that it is within the scope of Title IX. To the contrary, it is clear that the alleged fact (which the Court accepts as true, incidentally without any pushback by Defendant) that Defendant has tax-exempt status affirmatively fails to plausibly suggest the legal conclusions (which the Court does not accept as true) that Defendant has been extended Federal financial assistance, that Defendant is a "recipient," and that Defendant is within the scope of Title IX so as to be potentially liable thereunder.

As Defendant notes, other Courts have drawn the same conclusions. For example, in *Johnny's Icehouse*, the plaintiff sought "to invoke Title IX's nondiscrimination requirements on the premise that [the defendant's] tax-exempt status under Section 501(c)(3) is a form of federal financial assistance." *Id.* at 971. But "[t]hat contention simply does not withstand analysis." *Id.* As the court explained

> Though to be sure the possession of such an exemption obviously makes the possessor the "recipient" of a higher net income than if it had to pay taxes, and presumably the beneficiary of more receipts because of the deductibility of its donors' contributions, those benefits—unlike those expressly listed in [34 C.F.R. § 106.2(i)—must be recognized as indirect rather than direct subsidies.

---

[9] It is very regrettable that the portion of the definition of "Federal financial assistance" set forth in paragraph (j)(1) effectively defines "Federal financial assistance" in terms of itself," by defining "Federal financial assistance" as including a "grant or loan of Federal financial assistance." And sometimes this kind of tautological, circular definition poses interpretive problems. But not here; even if the circular nature of this definition leads to questions of what all is included within the term "Federal financial assistance," there is no question that tax-exempt status provides an entity no "grant or loan" of *anything*, including "Federal financial assistance" however that term ultimately is defined (as it ideally would be without any tautologies or circularity).

In short, "federal financial assistance" encompasses only direct transfers of federal money, property or services from the government to a program. Exemption from taxation just does not equate to such direct transfers.

Moreover, such a definition of "federal financial assistance" is consistent with the Spending Clause foundation for Title IX. That is, when the government offers to transfer money or property to an entity to support an educational program or activity, the intended recipient has the choice whether or not to accept the assistance and the concomitant obligation not to discriminate on the basis of sex. While Congress may condition tax exempt status on an organization's conforming to the specific categories in Section 501(c)(3)(as discussed in *Bob Jones Univ. v. United States,* 461 U.S. 574, 585–92, 103 S. Ct. 2017, 76 L.Ed.2d 157 (1983)), that was not the power that Congress invoked to subject entities to the nondiscrimination requirements of Title IX.

So [the plaintiff] fails on [this]contention . . . . [The defendant's] tax exempt status, without more, is [] insufficient to subject it to the antidiscrimination requirements of Title IX.

*Id.* at 971-72 (footnote and one citation omitted). The Court agrees with this analysis. Defendant notes that various other district courts have ruled to the same effect, and it calls this view the majority view. (Doc. No. 14 at 6-7). Whether it actually could be declared the majority view after a certifiable count of all cases ruling on this issue, it is certainly the more persuasive view. To Plaintiffs' credit, they accurately cite several cases taking the opposite view of the one the Court is taking herein. But the Court rejects those cases, not least because the Court believes that they do not focus sufficiently on the words contained in the applicable regulation that describes "Federal financial assistance," such as "grant or loan." 34 C.F.R. § 106.2(g). Having reviewed the cases cited respectively by the two sides—all of them non-binding—the Court sides with Defendant on this issue.

Additionally, Plaintiffs make the following argument:

As noted above, this is clearly an attack on one of the elements of Plaintiffs' Title IX claims under the auspices of subject matter jurisdiction, which "the Sixth Circuit has forbidden" at this preliminary stage. *Ultra Mfg. v. Williamston Prods.*, No. 21-12223, 2022 WL 1124183, at *3 (E.D. Mich. Apr. 14, 2022). When "an attack on subject matter jurisdiction also implicates an element of the cause of

action, then the district court should find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim." *Gentek Bldg. Prods., Inc., v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

Defendant Currey Ingram has launched an attack on subject matter jurisdiction that clearly implicates the elements of Plaintiffs' Title IX claims in Counts I and II. Under controlling Sixth Circuit precedent, the Court should find that it has jurisdiction and should deal with Currey Ingram's objection as a direct attack on the merits of Plaintiffs' Title IX claims. Thus, Currey Ingram's motion to dismiss should thus be denied in its entirely [*sic*], as improper.

(Doc. No. 21 at 10). The Court is at a loss here, because it perceives that Defendant has indeed clearly framed its argument here (that Defendant is not within the scope of Title IX) as an attack on the *merits*—on one of the elements—of Plaintiffs' Title IX claims under Rule 12(b)(6). It was only the challenge to *the state-claim laws* that Defendant framed as an attack on subject-matter jurisdiction. In any event, the Court recognizes that the requirement that the defendant be a recipient of Federal financial assistance is indeed an element of Plaintiffs' Title IX claims. *E.g.*, *Hall v. Millersville Univ.*, 22 F.4th 397, 408 (3d Cir. 2022) (noting that "[t]o prevail on their Title IX claim, the [plaintiffs] must show [among other things]: 1) [the defendant] received federal funds"); *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263 (4th Cir. 2021) ("To establish a Title IX claim based on student-on-student sexual harassment, a plaintiff must show [among other things] that: (1) they were a student at an educational institution receiving federal funds[.]"). And the Court has treated such requirement accordingly. The Court finds not that it lacks jurisdiction over Plaintiffs' Title IX claims, but rather that Plaintiffs have failed to satisfy the *Twombly/Iqbal* standard because they have failed to allege facts (taken as true, of course), that plausibly suggest that this element is satisfied.

Seeking to avoid this result, Plaintiffs state in their Response that "in 2020, Currey Ingram sought and received a $1.57 million federal Paycheck Protection Program ("PPP") loan. PPP loans are matters of public record." (Doc. No. 21 at 2 (citing Ex. B)). Plaintiffs' citation here to Exhibit

B—meaning Exhibit B to *the Response*, not the Complaint—is telling. Plaintiffs did not alleged

this fact in their Complaint, and instead were relegated to injecting this fact into the record via the

Response (and Exhibit "B" thereto). This was inappropriate and insufficient to refute the Motion.

As the Sixth Circuit has explained:     !

> As a general rule, a court considering a motion to dismiss "must focus only on the allegations in the pleadings." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). This does not include plaintiffs' responses to a motion to dismiss. *Id.* "If plaintiffs believe they need to supplement their complaint with additional facts to withstand [a motion to dismiss] ... they have a readily available tool: a motion to amend the complaint under Rule 15." *Id.* They cannot "amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Id.*

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (alterations

in original). Here, Plaintiffs never filed a motion to amend their Complaint to allege the facts

reflected in Exhibit B. Their attempt to amend their Complaint via an exhibit to their Response is

improper, and so the Court will not countenance it. This means that the Court should and will

disregard the asserted facts reflect in Exhibit B, i.e., that Defendant was a recipient of federal funds

under the PPP. Thistack of Plaintiffs fails to save the Title IX counts.

To be clear, the problem is not that the Court does not deem Exhibit B a public record of

which it could take judicial notice. To the contrary, the Court assumes arguendo that Exhibit B is

a public record of which the Court could take judicial notice, had it been inserted into the case

properly, at a timely juncture; indeed, the Court assumes arguendo that it could take judicial notice

not only of the *existence of* Exhibit B but also (in what is a shakier assumption) the *truth of the*

*facts reflected in* Exhibit B. Nor is the problem that the Court does not believe that it could accept

as true the facts suggested by Exhibit B; to the contrary, the Court can say unequivocally that (i)

if the facts suggested in Exhibit B had been alleged in the Complaint, it would have accepted those

facts to be true. Nor is the problem that Exhibit B is an extra-complaint document that under the

general rule could not be considered on a motion to dismiss, at least not without converting it into a motion for summary judgment;[10] instead, the Court arguendo makes the (shaky) assumption that Exhibit B is a document that could under certain circumstances be considered on a motion for summary judgment under certain circumstances.

The problem, rather, is that the facts reflected in Exhibit B, and correspondingly asserted in the Response, were not alleged in the Complaint; they therefore cannot serve as the underlying factual matter to support the facial plausibility of Plaintiffs' legal theory that Defendant is a recipient of Federal financial assistance (or, as Plaintiffs put it in the Complaint, "receives federal financial assistance"). Put differently, even if *under certain circumstances* the Court could consider Exhibit B and the facts reflected therein (as well as Plaintiffs' assertion of those facts) in response to a motion for summary judgment, those circumstances do not exist here; use of an extra-complaint document to oppose a motion to dismiss is *not* proper where its purpose is to inject entirely new factual matter that was not set forth in the complaint and which is invoked to support an entirely new theory as to how alleged facts plausibly suggest the correctness of the plaintiff's legal conclusion/theory.

Finally, the Court notes that Plaintiffs state, "Currey Ingram has launched a factual attack on the merits of Plaintiffs' Title IX claims, which is improper at the Rule 12(b)(1) motion stage. Respectfully, under Sixth Circuit precedent, the Court must refrain from making a factual determination on the merits of Plaintiffs' claims at this premature motion to dismiss stage." (Doc.

---

[10] As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). But when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC,* 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

No. 21 at 8). As noted above, Defendant is indeed attacking the merits of Plaintiffs' Title IX claims, but contrary to Plaintiffs' implication, Defendant (i) is doing so not under Rule 12(b)(1) but rather under Rule 12(b)(6); and (ii) is not making a "factual challenge" except to the extent that the Rule 12(b)(6) challenge Defendant is making can be deemed a "factual challenge" because Defendant asserts that the Complaint's alleged facts (accepted as true) fail to plausibly suggest a right to relief on particular claims. Whether this kind of (very familiar and commonplace) Rule 12(b)(6) motion is deemed a "factual attack"—and the Court suggests that it is to the contrary better deemed a "facial challenge" because it is based on what is asserted on the face of the Complaint—it is not at all premature.

In short, the Complaint plausibly fails to suggest that Defendant is an entity who could be subject to Title IX and its provision of potential liability for entities subject to Title IX, and the Title IX claims therefore will be dismissed.

## MOTION TO DISMISS THE STATE-LAW CLAIMS UNDER RULE 12(b)(1)

In both its Supporting Memorandum and its Reply, Defendant argues as follows:

> As [Defendant] is not a recipient of federal financial assistance, and the requirements of Title IX do not apply, Count I and Count II of Plaintiffs' Complaint for violation of Title IX fails as a matter of law. Plaintiffs' remaining causes of action do not involve a federal question, so jurisdiction is not provided under 28 U.S.C. § 1331. In addition, Plaintiffs have alleged [that] both Plaintiffs and Defendant are Tennessee residents so complete diversity of citizenship between Plaintiff[s] and Defendant cannot exist, and there is no diversity jurisdiction under 28 U.S.C. § 1332.
>
> Based on the foregoing, this Court lacks subject matter jurisdiction . . . .

(Doc. No. 14 at 8; Doc. No. 22 at 5).

Defendant is somewhat off-base here. Even with all of the federal claims dismissed just as Defendant asserts they should be in the first sentence quoted above, the Court does not *lack* jurisdiction to adjudicate the remaining claims, even though they are all based on state-law and

even though diversity of citizenship is lacking. Instead, the Court has the discretion to decline to exercise (or, perhaps to be more precise, continue to exercise) jurisdiction over the state-law claims despite the fact that it would have lacked jurisdiction had they been brought by themselves at the outset (rather than having *supplemental* jurisdiction over them as it did in the case under 28 U.S.C. § 1367(c))). As the undersigned has explained previously:

> [A] district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also Ford v. Frame*, 3 F. App'x 316, 318 (6th Cir. 2001) ("[D]istrict courts possess broad discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed.").

*Brown v. Knoxville HMA Holdings, LLC*, 447 F. Supp. 3d 639, 653 (M.D. Tenn. 2020).

But although the Court has the discretion to continue to exercise supplemental jurisdiction under these circumstances, typically it is appropriate for the district court to decline to do so:

> The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L.Ed.2d 720 (1988); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

*Id.* The Court finds that this case, like *Brown*, in an appropriate case to decline to exercise supplemental jurisdiction. Here, just as in *Brown*:

> The sole basis for [original] subject matter jurisdiction in the . . . Complaint is federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff does not assert any factual allegations giving rise to diversity jurisdiction, and indeed the . . . Complaint is explicit as to the lack of diversity of citizenship of the parties. (Doc. No. 15 ¶¶ 11-15 (alleging that all parties are from Tennessee)). Having granted Defendants' Motion to Dismiss Plaintiffs' [federal] claims (over which the Court has original jurisdiction) and because the parties are non-diverse, and the aforementioned factors weigh[ing] in favor of declining jurisdiction over Plaintiffs' state law claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses them without prejudice. Plaintiffs may seek to refile them in a Tennessee state court.

*Id.* at 653–54.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' Title IX claims (Counts I and II) will be dismissed pursuant to Rule 12(b)(6), and Plaintiffs' other claims (the state-law claims) will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them.

An appropriate corresponding order will be entered.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE